# EXHIBIT 1

EFiled:  Apr 08 2015 06:02PM EDT
Transaction ID 57049411
Case No. 10484-VCG

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN RE RIVERBED TECHNOLOGY,   )   CONSOLIDATED
INC. STOCKHOLDERS LITIGATION  )   C.A. No. 10484-VCG

### STIPULATION AND AGREEMENT OF
### COMPROMISE, SETTLEMENT AND RELEASE

This Stipulation and Agreement of Compromise, Settlement and Release (together with the exhibits hereto, the "Stipulation") is entered into as of April 8, 2015, by and among the Co-Lead Plaintiffs (defined below) and the Defendants (defined below) in the above-captioned action (the "Parties") pending before the Court of Chancery of the State of Delaware (the "Court of Chancery" or the "Court") under Consolidated C.A. No. 10484-VCG (the "Action"), by and through the Parties' respective undersigned counsel, subject to the approval of the Court:

**WHEREAS**, on December 15, 2014, Riverbed Technology, Inc. ("Riverbed" or the "Company"), Project Homestake Holdings, LLC ("Newco") and Project Homestake Merger Corp. ("Merger Sub") announced that they had entered into an Agreement and Plan of Merger, dated as of December 14, 2014 (the "Merger Agreement"), at a purchase price of $21.00 per share in cash (the "Merger Consideration") for each outstanding share of Riverbed (the "Merger"). Newco and Merger Sub were formed by affiliates of Thoma Bravo, LLC (collectively, "Thoma Bravo");

**WHEREAS**, from December 19, 2014 to January 15, 2015, seven class action complaints[1] were filed in the Court of Chancery on behalf of Riverbed stockholders against Riverbed and its Board of Directors (the "Board" or the "Individual Defendants"), and Newco, Merger Sub and Thoma Bravo (collectively with Riverbed and the Individual Defendants, the "Defendants"); these actions were consolidated into the Action, and plaintiffs in the Action are collectively referred to herein as "Plaintiffs";

**WHEREAS**, on December 30, 2014, plaintiff Domenico Carlucci propounded his First Request for the Production of Documents to All Defendants;

**WHEREAS**, on January 7, 2015, Riverbed filed its Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy") with the Securities Exchange Commission ("SEC");

---

[1] The seven consolidated actions are as follows: *Gary Merryman, Individually and On Behalf of All Others Similarly Situated v. Riverbed Technology, Inc., et al.*, C.A. No. 10484-VCG; *Kamesh Bathla, On Behalf of Himself and All Others Similarly Situated v. Riverbed Technology, Inc. et al.*, C.A. No. 10486-VCG; *Domenico Carlucci, Individually and On Behalf of All Others, Similarly Situated v. Riverbed Technology, Inc. et al.*, C.A. No. 10498-VCG; *First Financial Trust, Individually and On Behalf of All Others Similarly Situated v. Riverbed Technology, Inc. et al.*, C.A. No. 10497-VCG; *Gerard Byrne, Individually and On Behalf of All Others Similarly Situated v. Boustridge et al.*, C.A. No. 10503-VCG; *Richard Krol, On Behalf of Himself and All Others Similarly Situated v. Riverbed Technology, Inc. et al.*, C.A. No. 10529-VCG; and *David Jessen v. Riverbed Technology, Inc. et al.*, C.A. No. 10546-VCG.

**WHEREAS**, on January 20, 2015, the Company filed its Definitive Schedule 14A with the SEC ("Definitive Proxy") and announced that the vote on the Merger was scheduled for March 5, 2015;

**WHEREAS**, Co-Lead Counsel (defined below) contends that the Definitive Proxy mooted several of the material disclosure claims raised in the operative complaint referenced below, and that those disclosures were made as a sole result of this litigation;

**WHEREAS**, Defendants deny that the any disclosures made in the Definitive Proxy were caused by Co-Lead Counsel's efforts in the litigation;

**WHEREAS**, on January 30, 2015, the Court entered an Order of Consolidation of the Related Actions and Appointment of Plaintiffs' Co-Lead Counsel, Executive Committee, Additional Counsel, and Delaware Counsel, therein appointing (i) the law firms of Block & Leviton LLP and Milberg LLP as "Co-Lead Counsel" for the Plaintiffs in the Action; (ii) Levi & Korsinsky, LLP, Kahn Swick & Foti LLP, and Wolf Popper LLP, to an Executive Committee of Plaintiffs' Counsel; (iii) Johnson & Weaver LLP and Brodsky & Smith LLC as Additional Counsel; and (iv) Andrews & Springer, LLC and Rigrodsky & Long, P.A., as Delaware Counsel (collectively, "Plaintiffs' Counsel"), and designating the Verified Amended Class Action Complaint for Breach of Fiduciary Duty filed by plaintiff Domenico Carlucci on January 15, 2015 as the operative complaint;

**WHEREAS**, the Action alleged, among other things, that the members of the Board of Directors breached their fiduciary duties to stockholders by initiating a process that undervalued Riverbed, by agreeing to a transaction that did not adequately reflect Riverbed's true value, and by failing to disclose material information relating thereto. The Action sought, among other things, an order enjoining the consummation of the Merger;

**WHEREAS**, on February 5, 2015, Co-Lead Plaintiffs filed their Motion for Expedited Proceedings;

**WHEREAS**, on February 16, 2015, the Court granted expedited discovery with respect to certain of Co-Lead Plaintiffs' disclosure claims;

**WHEREAS**, on February 21, 2015, Co-Lead Counsel took the deposition of Jerry Kennelly, the Company's Chief Executive Officer and Chairman of the Board;

**WHEREAS**, on February 24, 2015, Co-Lead Counsel took the deposition of Jon Woodruff, a senior member of Goldman Sachs;

**WHEREAS**, after arm's-length negotiations, on February 26, 2015, Co-Lead Plaintiffs' and Defendants, through their respective counsel, reached an agreement in principle, set forth in a Memorandum of Understanding (the "MOU"), providing for the settlement of the Action between and among Plaintiffs, on behalf of themselves and the putative Class (as defined below), and Defendants;

**WHEREAS**, prior to the execution of the MOU, Plaintiffs' Counsel and counsel for the Defendants did not discuss the appropriateness or amount of any application by Plaintiffs' Counsel for any award of attorneys' fees or expenses;

**WHEREAS**, in consideration for the MOU and in order to achieve a resolution of the Action, on February 26, 2015, Riverbed filed a Current Report on Form 8-K, that included certain supplemental information (the "Supplemental Disclosures") that was required by the MOU and that Co-Lead Counsel asserted in the Action and during settlement negotiations should be the subject of the Supplemental Disclosures by Riverbed;

**WHEREAS**, on February 26, 2015, the Parties informed the Court that they had entered into the MOU;

**WHEREAS**, on March 5, 2015, the shareholders of Riverbed approved the Merger;

**WHEREAS**, Co-Lead Counsel have engaged and consulted extensively with their respective financial experts for the purposes of evaluating and prosecuting the claims in the Action and in connection with the settlement set forth in this Stipulation;

**WHEREAS**, counsel for the Parties, after extensive negotiations, were able to reach agreement on the Supplemental Disclosures attached hereto as Exhibit A that Co-Lead Counsel demanded for dissemination to Riverbed stockholders

sufficiently in advance of the special meeting of stockholders to vote on the Merger on March 5, 2015;

**WHEREAS**, Co-Lead Counsel have been afforded the opportunity to conduct, and have completed, such additional discovery as Counsel for the Parties agreed to complete in good faith pursuant to the MOU to confirm the fairness, reasonableness and adequacy of the terms of this Settlement, and Co-Lead Counsel believe that settlement of the Action on the terms reflected in this Stipulation are fair, reasonable, and adequate to Plaintiffs and the putative Class;

**WHEREAS**, Defendants, solely to avoid the risks, costs, disruption and distraction of further litigation, and without admitting the validity of any allegations made in the Action, or any liability with respect thereto, have concluded that it is desirable that the claims against them be settled and dismissed on the terms reflected in this Stipulation;

**WHEREAS**, entry into the Stipulation by Co-Lead Counsel  is not an admission as to the lack of any merit of any of the claims asserted in the Action, and Co-Lead Counsel believe that the subsequent disclosures resulting from the Settlement permitted the Company's stockholders to make a fully informed decision with respect to the Merger;

**WHEREAS**, the Parties recognize the time and expense that would be incurred by further litigation of the Action and the uncertainties inherent in such litigation; and

**WHEREAS**, the Parties acknowledge that the settlement of the Action and the entry of a final judgment in connection therewith will bar, under the doctrines of *res judicata*, collateral estoppel, or otherwise, claims by Riverbed stockholders arising out of or related to the Merger; and

**WHEREAS**, the Parties wish to resolve the claims asserted by Plaintiffs in the Action and all claims arising out of the Merger, consistent with the terms of the MOU and following arm's-length negotiations, and have reached an agreement as set forth in this Stipulation providing for the settlement of the Action on the terms and conditions set forth below (the "Settlement");

**NOW, THEREFORE, IT IS STIPULATED AND AGREED**, subject to approval by the Court, pursuant to Court of Chancery Rule 23, that for good and valuable consideration, the Action shall be dismissed with prejudice as to all Defendants and against all members of the Class (as defined below), and the Settled Claims (as defined below) shall be completely, fully, finally and forever compromised, settled, released, discharged, and extinguished as to all Released Parties (as defined below), upon the following terms and conditions:

## DEFINITIONS

1.      In addition to the terms defined above, as used in this Stipulation the following capitalized terms shall have the meanings specified below:

(a) "Class" means a non-opt-out class that includes any and all record and beneficial owners of Riverbed common stock during the period beginning on December 14, 2014, and ending with the consummation of the Merger, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them.  Excluded from the Class are Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person.

(b) "Class Member" means a member of the Class.

(c) "Co-Lead Plaintiffs" means plaintiffs First Financial Trust and Dominico Carlucci.

(d) "Final Court Approval" of the Settlement means that the Court has entered the Judgment (as defined below) certifying the Class, approving the Settlement, and dismissing the Action with prejudice on the merits, and that the

Judgment either is finally affirmed on appeal or is no longer subject to further appeal and the time for any petition for reargument, appeal or review, by leave, certiorari, or otherwise, has expired.  Final Court Approval shall not include (and the Settlement is expressly not conditioned on) the approval of an award of attorneys' fees and the reimbursement of expenses to Plaintiffs' Counsel, and any appeal or further proceedings related thereto.  Final Court Approval shall not be affected by any appeal or other proceeding related solely to an application for attorneys' fees and expenses or any motion or action to enforce the Settlement.

      (e) "Individual Defendants" means Jerry M. Kennelly, Michael Boustridge, Eric Wolford, Kim Stevenson, Chris Schaepe, Mark S. Lewis, Mark Floyd, Steffan Tomlinson, and Mike Nefkens.

      (f) "Judgment" means the Order and Final Judgment to be entered in the Action substantially in the form attached hereto as Exhibit D.

      (g) "Notice" shall mean the Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing, substantially in the form attached hereto as Exhibit C.

      (h) "Person" means any individual, corporation, partnership, limited liability corporation, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity.

(i) "Settled Claims" means any and all claims (including "Unknown Claims" as defined below), demands, rights, liabilities, and causes of action of every nature and description whatsoever, against the Released Parties that have been or could have been asserted by Plaintiffs or any member of the Class in their capacity as stockholders, in any forum, including class, derivative, individual, or other claims, whether state, federal, or foreign, common law, statutory, or regulatory (including, without limitation, claims under the federal securities laws) arising out of or related to: (i) the allegations contained in the Action, (ii) the Merger, (iii) the Company's Preliminary Proxy, filed on January 7, 2015, the Company's Definitive Proxy, filed on January 20, 2015, or any other disclosures relating to the Merger, or alleged failure to disclose, with or without scienter, material facts to stockholders in connection with the Merger, (iv) the events leading to the Merger, (v) the negotiations in connection with the Merger, (vi) any agreements relating to the Merger, and any compensation or other payments made to any of the Defendants in connection with the Merger, (vii) the Merger Consideration, (viii) any alleged aiding and abetting of any of the foregoing, and (ix) any and all conduct by any of the defendants or any of the other Released Parties arising out of or relating in any way to the negotiation or execution of the MOU and this Stipulation; provided, however, that the Settled Claims shall not include (1) the right of Plaintiffs or any members of the Class to enforce in the

Court the terms of this Stipulation or the Settlement; or (2) any valid claims for appraisal pursuant to 8 *Del. C.* § 262.

(j) "Released Parties" means Defendants and each of their respective predecessors, successors in interest, parents, subsidiaries, affiliates, representatives, agents, trustees, executors, heirs, spouses, marital communities, assigns or transferees and any person or entity acting for or on behalf of any of them and each of them, and each of their predecessors, successors in interest, parents, subsidiaries, affiliates, representatives, agents, trustees, executors, heirs, spouses, marital communities, assigns or transferees and any person or entity acting for or on behalf of any of them and each of them (including, without limitation, any investment bankers, accountants, insurers, reinsurers or attorneys and any past or present officers, directors and employees of any of them).

(l) "Settlement Hearing" means the final hearing to be held by the Court to determine whether the Settlement should be approved as fair, reasonable and adequate and whether the Judgment approving the Settlement and dismissing the Action with prejudice should be entered.

(m) "Unknown Claims" means any Settled Claim that Plaintiffs or any member of the Class does not know or suspect to exist in his, her, or its favor at the time of the release of the Settled Claims as against the Released Parties, and any Settled Defendants' Claims which any Defendant or other Released Party does not

know or suspect to exist in his, her, or its favor at the time of the release of the Settled Defendants' Claims as against the Plaintiffs, the Class Members, and Plaintiffs' Counsel, including without limitation those which, if known, would or might have affected the decision to enter into the Settlement or whether or how to object to the Settlement.  Plaintiffs and the Class Members and Defendants and the Released Parties acknowledge that they may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Settled Claims and the Settled Defendants' Claims, but Plaintiffs and Defendants upon Final Court Approval shall expressly, fully, finally and forever settle and release, and each Class Member and each Released Party shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Settled Claims and Settled Defendants' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  With respect to any and all Settled Claims and Settled Defendants' Claims, the Parties stipulate and agree that, upon Final Court Approval, Plaintiffs and Defendants shall expressly waive, and each of the Class

Members and the Released Parties shall be deemed to have waived, and by

operation of the Judgment shall have waived, relinquished and released any and all

provisions, rights and benefits conferred by or under Cal. Civ. Code § 1542 or any

law of the United States or any state of the United States or territory of the United

States, or principle of common law that governs or limits a person's release of

unknown claims, including any law or principle of common law that is similar,

comparable or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR.

The Parties acknowledge that they understand the significance and consequence of

such release and such specific waiver of Cal. Civ. Code § 1542.  It is the intention

of Plaintiffs and Defendants, and by operation of law, the Class Members and the

Released Parties, to completely, fully, finally and forever extinguish any and all

Settled Claims and Settled Defendants' Claims, known or unknown, suspected or

unsuspected, which now exist, or heretofore existed, , and without regard to the

subsequent discovery of additional or different facts.  The Parties acknowledge,

and the Class Members and Released Parties by operation of law shall be deemed

to have acknowledged, that the inclusion of "Unknown Claims" in the definition of

"Settled Claims" and "Settled Defendants' Claims" was separately bargained for

and was a material element of the Settlement and was relied upon by each and all of the Parties in entering into the Stipulation.

## SETTLEMENT CONSIDERATION

2.     In consideration for the Settlement and dismissal with prejudice of the Action and the releases provided herein, Riverbed agreed to issue the Supplemental Disclosures set forth in a Current Report on Form 8-K, which amendment was filed with the SEC on February 26, 2015 and is attached hereto as Exhibit A.  Without admitting any wrongdoing or the validity of any allegations made in the Action, Defendants acknowledge that the filing and prosecution of the Action and discussions with Co-Lead Counsel were the sole cause for the Supplemental Disclosures.

## CERTIFICATION OF SETTLEMENT CLASS

3.     The Parties agree, for settlement purposes only, subject to Court approval, to the conditional certification of the Action as a non-opt-out class action pursuant to Court of Chancery Rule 23 on behalf of a class consisting of all record and beneficial owners of Riverbed common stock during the period beginning on December 14, 2014, through the date of the consummation of the Merger, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or

claiming under, any of them, and each of them.  Excluded from the Class are Defendants, members of the immediate family of any Defendant, any entity in which a Defendant has or had a controlling interest, and the legal representatives, heirs, successors or assigns of any such excluded person.  In the event that the Settlement does not become final for any reason, Defendants reserve the right to oppose certification of any plaintiff class in future proceedings.

**SUBMISSION TO THE COURT FOR SCHEDULING ORDER**

4.      As soon as practicable after execution of this Stipulation, the Parties shall apply to the Court for entry of a Scheduling Order substantially in the form attached hereto as Exhibit B.  The Parties will use their best efforts to seek the final approval of the Court for the Settlement and Stipulation as soon as practicable following appropriate notice to the Class members, in accordance with the terms of the Scheduling Order.

**NOTICE**

5.      Riverbed or its successor entity shall provide notice of the Settlement ("Notice"), in substantially the form attached hereto as Exhibit C, to the Class, as directed by the Court, in accordance with the Scheduling Order.

## DISMISSAL WITH PREJUDICE, WAIVER, AND GENERAL RELEASE

6.     Upon Court approval of the Settlement, the Action shall be dismissed with prejudice and without fees and costs, except as set forth in this Stipulation.

7.     *Settled Claims*. Upon Final Court Approval of the Settlement by the Court, Plaintiffs and all Class Members shall be deemed to, and by operation of the Judgment shall fully, finally, and forever release, relinquish, and discharge all Settled Claims as against all Released Parties.  Effective upon Final Court Approval, the Settlement shall result in the full and complete discharge, dismissal with prejudice on the merits, and release and settlement, to the fullest extent permitted by law, of all Settled Claims, including, but not limited to, the claims asserted in the Action.

8.     *Released Claims by Defendants*. Upon Final Court Approval of the Settlement by the Court, Defendants and all other Released Parties shall be deemed to, and by operation of the Judgment shall fully, finally, and forever release Plaintiffs, the Class Members, and Plaintiffs' Counsel from all claims arising out of the initiation, prosecution, settlement and/or resolution of the Action (collectively, the "Settled Defendants' Claims"), *provided, however*, that Defendants and Released Parties shall retain the right to enforce in this Court the

terms of the MOU or the Stipulation and to oppose any appraisal claims of any Class Member.  These claims include Unknown Claims as defined above.

## ORDER AND FINAL JUDGMENT

9.      If this Settlement is approved by the Court, the Parties shall seek entry of the Judgment in the form attached hereto as Exhibit D.   The Judgment shall, among other things: (i) certify the Class as a non-opt-out class pursuant to Court of Chancery Rule 23; (ii) certify Plaintiffs Carlucci and First Financial Trust as the Class Representatives; (iii) approve this Settlement as fair, reasonable and adequate and in the best interests of the Class; (iv) dismiss the Action with prejudice on the merits, as against any and all Defendants, without fees or costs to any party except as herein provided; (v) provide for the release of claims as described herein; and (vi) reserve jurisdiction for the purpose of effectuating the Settlement.

## CONDITIONS OF SETTLEMENT

10.      The consummation of the Settlement is subject to the following conditions: (a) certification of the non-opt-out Class for settlement purposes; (b) preliminary approval by the Court and the issuance of a Scheduling Order; (c) the provision of notice, which shall set forth the details of the Settlement, to potential Class Members; (d) Final Court Approval of the Settlement; (e) dismissal of the Action with prejudice and without awarding fees and costs to any party (other than

as expressly provided herein); and (f) none of the material terms of the Settlement as set forth in the Stipulation being modified pursuant to any appeal or review; provided, however, that the Court's approval of the Settlement is not contingent on its approval of any fee application and that the Settlement shall be valid and final even if the Court reduces or alters the amount of fees or expenses requested.

## TERMINATION

11.     This Stipulation shall be null and void and of no force and effect if the Settlement does not obtain Final Court Approval for any reason; provided, however, that any decision by the Court to approve an award of attorneys' fees and expenses less than the amount of attorneys' fees and expenses sought by Plaintiffs' Counsel, or not to award any attorneys' fees or expenses, shall not void the Stipulation or the Settlement.

12.     Should this Stipulation not be fully executed by all of the Parties hereto, or in the event that the Settlement is rendered null and void for any of the reasons provided in this paragraph, the Parties shall return to their respective litigation positions in the Action as of the time immediately prior to the date of the execution of the MOU.  If the Settlement is terminated pursuant to the terms set forth herein, no party shall be entitled to recover any costs or expenses incurred in connection with the Action, and the MOU, the Stipulation, and any orders that may have been entered by any court in connection with the Stipulation: (i) shall be null

and void and of no force and effect; (ii) shall not be admissible in evidence or referred to for any purpose in the Action or in any other litigation or proceeding; (iii) shall not be deemed a presumption, a concession, or an admission by any party of any fault, liability, wrongdoing, or any infirmity or weakness of any claim or defense, as to any facts or claims that have been or might be alleged or asserted in the Action, or any other action or proceeding that has been, will be, or could be brought, and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Action, or in any other action or proceeding, whether civil, criminal or administrative, for any purpose; and (iv) shall not be deemed to prejudice in any way the position of any party with respect to the Action or any other litigation or proceeding, including the right of Defendants to oppose certification of the class in any future proceeding, or the right of Plaintiffs to prosecute the Action as if the Settlement and all related discussions had not taken place.  This Stipulation is not intended to, and does not, release any claims to enforce the Stipulation or the Settlement by any of the Parties hereto.  Co-Lead Counsel shall retain the right to petition the Court for an award of attorneys' fees and reimbursement of expenses based on the publication of the Supplemental Disclosures.  Defendants' Counsel retains the right to oppose such request.

## REPRESENTATIONS OF THE PARTIES AND COUNSEL

13.     Class Representatives and Co-Lead Counsel believe that the terms of this Stipulation are fair, reasonable, and adequate.  Class Representatives and Co-Lead Counsel believe that it is reasonable to pursue the Settlement based upon the terms and procedures outlined in this Stipulation.

14.     Defendants have denied, and continue to deny, that any of them have committed or have threatened to commit any violations of law or breaches of duty to the Plaintiffs, the Class or anyone else.  Defendants are entering into the Stipulation solely because the proposed Settlement will eliminate the uncertainty, distraction, burden, and expense of further litigation.

## ATTORNEYS' FEES

15.     Subject to the terms and conditions of this Stipulation and any Order of the Court, Plaintiffs may apply to the Court for an award of attorneys' fees and expenses to Plaintiffs' Counsel of up to $500,000.  Defendants acknowledge that Plaintiffs' Counsel intends to assert a claim for attorneys' fees and reimbursement of expenses in the Action, and Defendants will not oppose such application for fees and expenses provided the request for an award of attorneys' fees and expenses does not exceed $500,000 in the aggregate for their services in the Action.  Subject to the terms and conditions of this Stipulation and approval of the Court, Riverbed (or its insurer(s) or successor(s)) on behalf of and for the

benefit of Defendants agrees to pay such attorneys' fees and expenses as the Court may award to Plaintiffs' Counsel upon such application, and Riverbed (or its insurer(s) or successor(s)) will be obligated to pay only those costs, fees or expenses of Plaintiffs' Counsel that may be awarded or approved by the Court in connection with the Action. No other Defendant shall bear responsibility for such payment. The Parties agree that any agreement with respect to, or approval of, an award of attorneys' fees and expenses to Plaintiffs' Counsel shall not be a condition to the Settlement, and that any failure of the Court to approve a request for attorneys' fees in whole or in part shall have no impact on the effectiveness or enforceability of the Settlement. Plaintiffs' Counsel warrant that no portion of any award of attorneys' fees and expenses shall be paid to the Plaintiffs or to any member of the Class, except as approved by the Court. Except as provided herein, Defendants and Released Parties shall bear no other expenses, costs, damages, or fees alleged or incurred by Plaintiffs, by any member of the Class, or by any of their attorneys, experts, advisors, agents, or representatives, and Defendants and the Released Parties shall have no responsibility for, and no liability with respect to, the fee and/or expense allocation among Plaintiffs' Counsel and/or any other person who may assert any claim thereto.

16.     The amount of attorneys' fees and expenses awarded by the Court shall be paid within ten (10) business days after the entry of an order

awarding them, subject to the joint and several obligations of Plaintiffs' Counsel to make refunds or repayments to the entity that made the initial payments or its successor in interest if any specified condition to the settlement is not satisfied or if, as a result of any appeal and/or further proceedings or remand, or successful collateral attack, the Court's approval of the Settlement is reversed or the releases granted to the Released Parties are materially modified, any dismissal order is reversed, or the fee or costs award is reduced or reversed. At the time the fees are paid they shall be paid via wire transfer to an account managed by Block & Leviton LLP, and payment in accordance with the wire instructions provided by such counsel shall fully and completely discharge the obligations of Riverbed (or its insurer(s) or successor(s)) to pay any fees awarded by the Court.  No other applications for attorneys' fees and expenses shall be filed by Plaintiffs' Counsel in connection with the Settlement of the Action, and Plaintiffs' Counsel expressly waive any right to seek any award of such fees and expenses in connection with the Settlement of the Action except as provided in this paragraph. No fees or expenses shall be paid to Plaintiffs' Counsel pursuant to the Settlement in the absence of approval by the Court of a complete release of all Released Parties, in substantially the same form as described herein.  Co-Lead Counsel shall have the right to distribute, in their complete discretion, any fees and expenses awarded by the

Court to Plaintiffs' Counsel and Defendants shall have no right to object to said distribution.

## EXPENSES OF NOTICE AND ADMINISTRATION

17.     Riverbed (or successor(s)) shall be responsible for effectuating the Court-approved notice and shall pay the costs and expenses related to providing Notice of the Settlement to the members of the Class, with the understanding that such Notice is to be made by U.S. Mail unless otherwise ordered by the Court.  Defendants shall cause to be filed with the Court an affidavit attesting to the dissemination of the Notice at least ten (10) business days prior to the hearing concerning the proposed Settlement.

## STAY OF PROCEEDINGS

18.     Effective immediately, and pending Final Court Approval of the Settlement by the Court, the Parties and their counsel agree that all proceedings in the Action, except for those related to the Settlement shall be stayed until the Settlement-related proceedings are concluded.

19.     With respect to any action that is currently pending or is later filed in state or federal court asserting claims that are related to the subject matter of this Action prior to Final Court Approval of the Settlement, Co-Lead Counsel and Class Representatives shall cooperate with Defendants in obtaining the

dismissal, stay, or withdrawal of such related litigation, including where appropriate joining in any motion to dismiss or stay such litigation.

20.     The Parties shall request that the Court order in the Scheduling Order that, pending final determination of whether the Settlement should be approved, Plaintiffs in the Action and all members of the Class, or any individually, are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution of any action asserting any Settled Claims, either directly, representatively, derivatively or in any other capacity, against any Released Parties.

## STIPULATION NOT AN ADMISSION

21.     The fact of and provisions contained in this Stipulation, and all negotiations, discussions, actions and proceedings in connection with this Stipulation, shall not be deemed or constitute a presumption, concession or an admission by any Party in the Action, any signatory hereto or any Released Party of any fault, liability or wrongdoing or lack of any fault, liability or wrongdoing, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings, and shall not be offered or received in evidence or otherwise used by any person in the Action, or any other action or proceeding, except in connection with any proceeding to enforce the terms of this Stipulation of the Judgment, including the dismissal of any Settled Claims.   The fact of and provisions

contained in this Stipulation, and all negotiations, discussions, actions and proceedings leading up to the execution of this Stipulation, are confidential and intended for settlement purposes only.

## BEST EFFORTS

22.     Class Representatives, Defendants, and their attorneys agree to cooperate fully with one another in seeking the Court's approval of this Stipulation and the Settlement, and to use their best efforts to effect, take, or cause to be taken all actions, and to do, or cause to be done, all things reasonably necessary, proper, or advisable under applicable laws, regulations, and agreements to consummate and make effective, as promptly as practicable, the Settlement and this Stipulation (including, but not limited to, using their best efforts to resolve any objections raised to the Settlement) and the dismissal of the Action with prejudice and without costs, fees or expenses to any party, except as provided herein.

23.     Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time not expressly set forth by the Court in order to carry out any provisions of this Stipulation.

## GOVERNING LAW; CONTINUING JURISDICTION

24.     This Stipulation and the Settlement shall be governed by and construed in accordance with the laws of the State of Delaware, without regard to Delaware's principles governing choice of law.  The Settlement shall be submitted

for approval only by the Court of Chancery of Delaware, and any application for an award of attorneys' fees and expenses pursuant to the Settlement must be made in the Court of Chancery of Delaware.  Any dispute arising out of or relating in any way to this Stipulation or the Settlement shall not be litigated or otherwise pursued in any forum or venue other than the Court.  Each party hereto (i) consents to personal jurisdiction in any such action (but in no other action) brought in the Delaware Court; (ii) consents to service of process by registered mail upon such party and/or such party's agent; (iii) waives any objection to venue in the Delaware Court and any claim that Delaware or the Delaware Court is an inconvenient forum; and (iv) waives any right to demand a jury trial as to any such action. The Parties submit themselves to the exclusive jurisdiction of the Delaware Court for the enforcement, interpretation of the Stipulation and its exhibits, and all other matters regarding or relating to them. Without affecting the finality of the Settlement, the Delaware Court shall retain jurisdiction for purposes, among other things, of administering the Settlement and resolving any disputes hereunder.

## CONFIDENTIALITY

25.      To the extent permitted by law and applicable Court rules, all agreements made and orders entered during the course of the Action relating to the confidentiality of documents or information shall survive this Settlement, subject to the terms of such agreements or orders.

## CONSTRUCTION

26.     This Settlement shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Party on the ground that the Party or its counsel drafted this Settlement.

27.     Paragraph titles have been inserted for convenience only and will not be used in determining the terms of this Stipulation.

28.     The terms and provisions of this Stipulation are intended solely for the benefit of the Released Parties, the Class, and their respective agents, executors, heirs, successors, and assigns, and it is not the intention of the Parties to confer rights or remedies upon any other person or entity, except any attorneys' fees and expenses to be paid pursuant to the terms of this Stipulation.

## ENTIRE AGREEMENT; AMENDMENTS OR MODIFICATIONS

29.     This Stipulation constitutes the entire agreement among the Parties with respect to the subject matter hereof, supersedes all written and oral communications, agreements or understanding that may have existed prior to the execution of this Stipulation, and may be modified or amended only by a writing signed by all of the Parties.

## EXECUTION IN COUNTERPARTS

30.     This Stipulation may be executed in any number of actual or copied counterparts and by each of the different Parties on several counterparts,

each of which when so executed and delivered will be an original.  The executed signature page(s) from each actual or copied counterpart may be joined together and attached and will constitute one and the same instrument.

## SUCCESSORS AND ASSIGNS

31.     This Stipulation shall be binding upon and shall inure to the benefit of the Parties and their respective agents, executors, heirs, successors, and assigns.

## WARRANTY

32.     Class Representatives and their respective counsel in the Action represent and warrant that Class Representatives were stockholders of the Company and were stockholders at all relevant times and that none of Class Representatives claims or causes of action referred to in any complaint in the Action or this Stipulation, or any claims Class Representatives could have alleged, have been assigned, encumbered or in any manner transferred in whole or in part.

## EXHIBITS

33.     The Exhibits to this Stipulation are incorporated into and constitute an integral part of this Stipulation.

## AUTHORITY

34.     Each of the undersigned attorneys affirm that he or she has been duly empowered and authorized by his or her client(s) to enter into the Stipulation and bind their client(s) thereto.

**IN WITNESS WHEREOF,** the Parties have executed this Stipulation effective as of the date set forth above.

**ANDREWS & SPRINGER, LLC**

*/s/ Peter B. Andrews*

_____

Peter B. Andrews, Esq. (# 4623)
Craig J. Springer, Esq. (# 5529)
3801 Kennett Pike
Building C, Suite 305
Wilmington, Delaware 19807
(302) 504-4957

Jason M. Leviton
Joel A. Fleming
BLOCK & LEVITON LLP
155 Federal Street, Suite 400
Boston, MA 02110
(617) 398-5600

**RIGRODSKY & LONG, P.A.**

*/s/ Brian D. Long*

_____

Kent A. Bronson
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

Brian D. Long (#4347)
Gina M. Serra (#5387)
2 Righter Parkway, Suite 120
Wilmington, Delaware 19803
(302) 295-5310

*Co-Lead Counsel for Plaintiffs*

*Delaware Counsel for Plaintiffs*

29

**WILSON SONSINI GOODRICH & ROSATI, PC**

*/s/ Bradley D. Sorrels*

OF COUNSEL:

David J. Berger
Katherine L. Henderson
WILSON SONSINI GOODRICH & ROSATI, PC
650 Page Mill Road
Palo Alto, CA  94304-1050
(650) 493-9300

Tamika Montgomery-Reeves (#5783)
Bradley D. Sorrels (#5233)
Ian R. Liston (#5507)
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
(302) 304-7600

*Counsel for Defendants Riverbed Technology Inc., Michael Boustridge, Mark Floyd, Jerry M. Kennelly, Mark S. Lewis, Mike Nefkens, Chris Schaepe, Kim Stevenson, Steffan Tomlinson, and Eric Wolford*

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

*/s/ William M. Lafferty*

OF COUNSEL:

Mark E. McKane, PC
Ashley Littlefield
KIRKLAND ELLIS LLP
555 California
San Francisco, CA 94104
(415) 439-1400

William M. Lafferty (#2775)
Ryan D. Stottmann (#5237)
1201 N. Market Street
Wilmington, Delaware 19801
(302) 658-9200

*Counsel for Project Homestake Holdings, LLC, Project Homestake Merger Corp. and Thoma Bravo, LLC*

EFiled:  Apr 08 2015 06:02PM EDT
Transaction ID 57049411
Case No. 10484-VCG

# EXHIBIT A

| RIVERBED TECHNOLOGY, | RR Donnelley ProFile | SWRFBU-MWE-XN11.6.14 | SWRahamr0sl | 26-Feb-2015 14:11 EST | | 882189 TX 1 | 2* |
| FORM 8-K | | SFR | | 26-Feb-2015 15:31 EST | MRKD | HMS ESS | 0C |
| | | | | | | Page 1 of 1 | |

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, DC 20549

---

# FORM 8-K

---

### CURRENT REPORT
### Pursuant to Section 13 or 15(d)
### of The Securities Exchange Act of 1934

### Date of Report (Date of earliest event reported)
### February 26, 2015

---

# RIVERBED TECHNOLOGY, INC.
#### (Exact name of registrant as specified in its charter)

---

| **Delaware** | **001-33023** | **03-0448754** |
|:---:|:---:|:---:|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**680 Folsom Street**
**San Francisco, CA 94107**
(Address of principal executive offices, including zip code)

**(415) 247-8800**
(Registrant's telephone number, including area code)

**Not Applicable**
(Former name or former address, if changed since last report)

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☒ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

| RIVERBED TECHNOLOGY, | RR Donnelley ProFile | SWRFBU-MWE-XN11.6.14 | SWRtonngOpa | 26-Feb-2015 15:36 EST | | 882189 TX 2 | 3* |
| FORM 8-K | | SFR | | 26-Feb-2015 15:31 EST | MRKD | HMS ESS | 0C |

Page 1 of 1

## Item 8.01. Other Events.

On January 20, 2015, Riverbed Technology, Inc. ("we," "us," "Riverbed" or the "Company") filed with the Securities and Exchange Commission (the "SEC") a definitive proxy statement (the "Definitive Proxy Statement") with respect to the special meeting of Riverbed shareholders scheduled to be held on March 5, 2015 (the "Special Meeting"). As previously disclosed, on December 14, 2015, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement"), by and among the Company, Project Homestake Holdings, LLC, a Delaware limited liability company ("Newco"), Project Homestake Merger Corp., a Delaware corporation and a wholly owned subsidiary of Newco ("Merger Sub"). Newco and Merger Sub were formed by affiliates of Thoma Bravo, LLC ("Thoma Bravo").

As previously disclosed in the Definitive Proxy Statement, seven complaints, captioned *Gary Merryman, Individually and On Behalf of All Others Similarly Situated v. Riverbed Technology, Inc., et al.*, filed on December 19, 2014 and amended on January 21, 2015, *Kamesh Bathla, On Behalf of Himself and All Others Similarly Situated v. Riverbed Technology, Inc. et al.*, filed on December 22, 2014 and amended on January 14, 2015, *Domenico Carlucci, Individually and On Behalf of All Others, Similarly Situated v. Riverbed Technology, Inc. et al.*, filed on December 23, 2014 and amended on January 15, 2015, *First Financial Trust, Individually and On Behalf of All Others Similarly Situated v. Riverbed Technology, Inc. et al.,* filed on December 23, 2014, *Gerard Byrne, Individually and On Behalf of All Others Similarly Situated v. Boustridge et al.*, filed on December 24, 2014, *Richard Krol, On Behalf of Himself and All Others Similarly Situated v. Riverbed Technology, Inc. et al.*, filed on January 8, 2015 and amended on January 15, 2015, and *David Jessen v. Riverbed Technology, Inc. et al.*, filed on January 15, 2015, were filed in the Court of Chancery of the State of Delaware (the "Court"). On January 30 and February 2, 2015, the Delaware actions were consolidated as *In Re Riverbed Technology Inc. Shareholder Litigation*, Consol. C.A. No. 10484-VCG (the "Action").

On February 26, 2015, the Company, Newco, Merger Sub, Thoma Bravo and plaintiffs in the Action reached an agreement-in-principle providing for the settlement of the outstanding litigation on the terms and conditions set forth in a memorandum of understanding (the "MOU"). Pursuant to the terms of the MOU, without agreeing that any of the claims in the Action have merit or that any supplemental disclosure was required under any applicable statute, rule, regulation or law, the Company agreed to make certain supplemental and amended disclosures in this Current Report on Form 8-K. The MOU further provides that, among other things, (a) the parties to the MOU will enter into a stipulation of settlement (the "Stipulation") and will submit the Stipulation to the Court for review and approval; (b) the Stipulation will provide for dismissal of the outstanding litigation on the merits; (c) the Stipulation will include a general release of defendants of claims relating to the transaction; and (d) the proposed settlement is conditioned on final approval by the Court after notice to Riverbed shareholders. There can be no assurance that the settlement will be finalized or that the Court will approve the settlement.

The settlement will not affect the timing of the Special Meeting or the amount of merger consideration to be paid to shareholders of Riverbed in connection with the proposed Merger.

Pursuant to the proposed settlement, we have agreed to make the amended and supplemental disclosures set forth below. Important information concerning the proposed merger is set forth in the Definitive Proxy Statement. The Definitive Proxy Statement is amended and supplemented by, and should be read as part of, and in conjunction with, the information set forth in this Current Report on Form 8-K. Capitalized terms used in this Current Report on Form 8-K but not otherwise defined herein have the meanings ascribed to those terms in the Definitive Proxy Statement.

The Company and the other defendants have vigorously denied, and continue vigorously to deny, that they have committed or aided and abetted in the commission of any violation of law or engaged in any of the wrongful acts that were or could have been alleged in the referenced lawsuits, and expressly maintain that, to the extent applicable, they diligently and scrupulously complied with any applicable fiduciary and other legal duties and are entering into the contemplated settlement solely to eliminate the burden and expense of further litigation, to put the claims that were or could have been asserted to rest, and to avoid any possible delay to the closing of the Merger that might arise from further litigation. Nothing in this Current Report on Form 8-K, the MOU or any stipulation of settlement shall be deemed an admission of the legal necessity or materiality under applicable laws of any of the disclosures set forth herein.

Case 3:15-cv-00562-CRB   Document 18-1   Filed 04/16/15   Page 35 of 39

200Gen2Q3aKd@smz,

| RIVERBED TECHNOLOGY, | RR Donnelley ProFile | SWRFBU-MWE-XN 11.6.14 | SWRtonng0pa | 26-Feb-2015 15:36 EST | | 882189 TX 3 | 4* |
| FORM 8-K | | SFR | | 26-Feb-2015 15:31 EST | MRKD | HMS ESS | 0C |

Page 1 of 1

## AMENDED AND SUPPLEMENTAL DISCLOSURE

In the proposed settlement of the referenced lawsuits as set forth in this Current Report on Form 8-K, Riverbed agreed to make these amended and supplemental disclosures to the Definitive Proxy Statement. Without admitting in any way that the disclosures below are material or otherwise required by law, Riverbed makes the following amended and supplemental disclosures:

**The following supplemental disclosure is added following the third full paragraph on page 37 of the Definitive Proxy Statement concerning the Background to the Merger.**

The Board of Directors retained Qatalyst Partners for the strategic and financial alternatives review process because it believed that Qatalyst Partners' experience and expertise would increase the effectiveness of the process. In particular, the Board believed that Qatalyst Partners' historical focus on the technology sector and the strength of its relationships with potential strategic acquirers would complement Goldman's substantial knowledge and experience.

At the time the Board decided to retain Qatalyst Partners, it was aware of the possibility that one or more of the possible strategic and/or financial buyers that may be interested in engaging with the Company as part of the strategic and financial review process may also have previously engaged Goldman Sachs. However, at the time the Board of Directors engaged both Qatalyst Partners and Goldman Sachs as part of the strategic and financial review process, the Board did not know how that process would conclude, and in particular the Board did not know, and could not predict, what party(ies) or entity(ies) (whether strategic or financial), if any, would be interested in attempting to acquire any or all of the Company.

**The following underlined language is added to bullet (a) in the first full paragraph on page 48 of the Definitive Proxy Statement concerning the Opinion of Qatalyst.**

(a) the implied net present value of the estimated future unlevered free cash flows of Riverbed, derived from forecasted non-GAAP operating income based on the Management Projections with adjustments provided by Riverbed management, including adding depreciation and decreases in working capital and subtracting capital expenditures and taxes (using a 15% tax rate associated with non-GAAP operating income as provided by Riverbed's management), for calendar year 2015 through calendar year 2018 (which implied present value was calculated by using a range of discount rates of 10.0% to 16.0%, based on an estimated weighted average cost of capital for Riverbed);

**The following supplemental disclosure is added following the first full paragraph on page 49 of the Definitive Proxy Statement concerning the Opinion of Qatalyst.**

The CY15E P/E Multiples for the selected companies were as follows: Aruba Networks, Inc. (16.2x), Brocade Communications Systems, Inc. (11.9x), Cisco Systems, Inc. (12.3x), F5 Networks, Inc. (19.8x) and Juniper Networks, Inc. (12.9x).

**The following supplemental disclosure is added following the third sentence in the last paragraph on page 53 of the Definitive Proxy Statement concerning the Opinion of Goldman Sachs.**

Forecasted unlevered free cash flow of Riverbed provided by Riverbed management to Goldman Sachs included the effect of cash taxes at an effective tax rate of approximately 26% of forecasted GAAP operating income provided by Riverbed management.

**The following supplemental disclosure is added following the first continued sentence in the first continued paragraph on page 54 of the Definitive Proxy Statement concerning the Opinion of Goldman Sachs.**

The range of perpetuity growth rates was estimated by Goldman Sachs utilizing its professional judgment and experience, taking into account the Forecasts and market expectations regarding long-term real growth of gross domestic product and inflation.

Case 3:15-cv-00562-CRB   Document 18-1   Filed 04/08/15   Page 36 of 39

200GenZQ3aHb8uaz

| RIVERBED TECHNOLOGY, | RR Donnelley ProFile | SWRFBU-MWE-XN 11.6.14 | SWRahamr0sl | 26-Feb-2015 14:11 EST | | 882189 TX 4 | 2* |
| FORM 8-K | | SFR | | 26-Feb-2015 15:31 EST | MRKD | HMS ESS | 0C |

Page 1 of 1

**The following supplemental disclosure replaces the paragraph starting on page 55 and carrying over to page 56 of the Definitive Proxy Statement concerning the Opinion of Goldman Sachs.**

Goldman Sachs and its affiliates are engaged in advisory, underwriting and financing, principal investing, sales and trading, research, investment management and other financial and non-financial activities and services for various persons and other entities. Goldman Sachs and its affiliates and employees, and funds or other entities they manage or in which they invest or have other economic interests or with which they co-invest, may at any time purchase, sell, hold or vote long or short positions and investments in securities, derivatives, loans, commodities, currencies, credit default swaps and other financial instruments of Riverbed, Newco, any of their respective affiliates and third parties, including Thoma Bravo and OTPP and their respective affiliates and portfolio companies, or any currency or commodity that may be involved in the Merger. Goldman Sachs acted as financial advisor to Riverbed in connection with, and has participated in certain of the negotiations leading to, the Merger. Goldman Sachs expects to receive fees for its services in connection with the Merger, the principal portion of which is contingent upon consummation of the Merger, and Riverbed has agreed to reimburse certain of Goldman Sachs' expenses arising, and indemnify it against certain liabilities that may arise, out of its engagement. Goldman Sachs has provided certain financial advisory and/or underwriting services to Riverbed and/or its affiliates from time to time for which its Investment Banking Division has received, and may receive, compensation, including having acted as sole financial advisor on Riverbed's acquisition of OPNET Technologies in December 2012; sole arranger for a bridge loan provided to Riverbed (aggregate principal amount of $575 million) in December 2012; and financial advisor to Riverbed in connection with its response to an unsolicited bid in 2014. Goldman Sachs also has provided, and was providing as of December 14, 2014, certain financial advisory and/or underwriting services to Thoma Bravo and/or its affiliates and portfolio companies from time to time for which its Investment Banking Division has received, and may receive, compensation, including, among others, having acted as sole arranger for a bridge loan (aggregate principal amount of $700 million) provided to Blue Coat Systems, a portfolio company of Thoma Bravo and OTPP, in May 2013 and as co-manager for a bank loan (aggregate principal amount of $50 million) provided to Blue Coat Systems in February 2014. Goldman Sachs also has provided, and was providing as of December 14, 2014, certain financial advisory and/or underwriting services to OTPP and/or its affiliates and portfolio companies from time to time for which its Investment Banking Division has received, and may receive, compensation, including, among others, having acted as joint lead arranger for a bank loan (aggregate principal amount of $780 million) provided to ISS A/S, a portfolio company of OTPP, in March 2013; sole arranger for a bridge loan (aggregate principal amount of $700 million) provided to Blue Coat Systems, a portfolio company of OTPP and Thoma Bravo, in May 2013; financial advisor to Aircastle LTD, a portfolio company of OTPP, in connection with a minority investment in June 2013; joint bookrunner on a high yield debt offering (aggregate principal amount of $400 million) for Aircastle LTD in December 2013; co-manager for a bank loan (aggregate principal amount of $50 million) provided to Blue Coat Systems in February 2014; joint bookrunner on an initial public offering by ISS A/S, a portfolio company of OTPP, for an aggregate amount of DKK 9,425 million in March 2014; joint bookrunner on a senior notes offering by Aircastle LTD (aggregate principal amount $500 million) by Aircastle LTD in March 2014; co-manager for a bank loan (aggregate principal amount of $425 million) provided to INC Research, a portfolio company of OTPP, in October 2014; bookrunner on an initial public offering by INC Research Holdings, Inc., a portfolio company of OTPP, for an aggregate amount of $150 million in gross proceeds in November 2014; and joint bookrunner in a notes issuance by ISS A/S (aggregate principal amount of EUR 1.2 billion) in November 2014. During the two year period ended December 14, 2014, the Investment Banking Division of Goldman Sachs has received compensation for financial advisory and/or underwriting services provided directly to Thoma Bravo and/or to its affiliates and portfolio companies (which may include companies that are not controlled by Thoma Bravo) of approximately $1.6 million. During that same period, the Investment Banking Division of Goldman Sachs has received compensation for financial advisory and/or underwriting services provided directly to OTPP and/or to its affiliates and portfolio companies (which may include companies that are not controlled by OTPP) of approximately $25.7 million. Goldman Sachs may also in the future provide financial advisory and/or underwriting services to Riverbed, Newco and their respective affiliates, and Thoma Bravo, OTPP and their respective affiliates and portfolio companies for which its Investment Banking Division may receive compensation. Affiliates of Goldman Sachs also may have co-invested with Thoma Bravo, OTPP and their respective affiliates from time to time and may have invested in limited partnership units of affiliates of Thoma Bravo and OTPP from time to time and may do so in the future. The Board of Directors selected Goldman Sachs as its financial advisor because it is an internationally recognized investment banking firm that has substantial experience in transactions similar to the Merger. Pursuant to terms of an engagement letter between Riverbed and Goldman Sachs, dated October 9, 2014 (the "Goldman Sachs Engagement Letter"), Riverbed engaged Goldman Sachs to act as its financial advisor in connection with the contemplated

| RIVERBED TECHNOLOGY, | RR Donnelley ProFile | SWRFBU-MWE-XN 11.6.14 | SWRtonng0pa | 26-Feb-2015 15:37 EST | | 882189 TX 5 | 3* |
| FORM 8-K | | SFR | | 26-Feb-2015 15:31 EST | MRKD | HMS ESS | 0C |

Page 1 of 1

transaction. Pursuant to the Goldman Sachs Engagement Letter, Riverbed has agreed to pay Goldman Sachs a transaction fee of approximately $30 million (before any reductions) in connection with transactions contemplated by the Merger Agreement, approximately $2.5 million of which was contingent upon the announcement of the Merger Agreement, and the remainder of which is both contingent upon the closing of the Merger and will be reduced on account of credits for fees previously paid by Riverbed to Goldman Sachs. In addition, Riverbed has agreed to reimburse Goldman Sachs for its expenses, including attorneys' fees and disbursements, and to indemnify Goldman Sachs and related persons against various liabilities, including certain liabilities under the federal securities laws.

**The following supplemental disclosure is added following the first full paragraph on page 56 of the Definitive Proxy Statement concerning Management Projections.**

In addition, for use by the financial advisors in performing the financial analyses, management provided an estimated net cash balance for September 30, 2014 of approximately $143 million, which reflects the estimated net proceeds from the Divestitures.

### ADDITIONAL INFORMATION AND WHERE TO FIND IT

In connection with the proposed Merger, the Company filed the Definitive Proxy Statement and a form of proxy with the SEC on January 20, 2015, and the Definitive Proxy Statement and a form of proxy were mailed to the stockholders of record as of January 20, 2015, the record date fixed by the Company's board of directors for the special meeting. BEFORE MAKING ANY VOTING DECISION, THE COMPANY'S STOCKHOLDERS ARE URGED TO READ THE DEFINITIVE PROXY STATEMENT CAREFULLY AND IN ITS ENTIRETY BECAUSE THE DEFINITIVE PROXY STATEMENT CONTAINS IMPORTANT INFORMATION ABOUT THE PROPOSED MERGER. The Company's stockholders will be able to obtain, free of charge, a copy of the Definitive Proxy Statement and other relevant documents filed with the SEC from the SEC's web site at http://www.sec.gov. The Company's stockholders will also be able to obtain, free of charge, a copy of the Definitive Proxy Statement and other relevant documents by requesting them in writing or by telephone from us at the following address:

Riverbed Technology, Inc.
Attn: Corporate Secretary
680 Folsom Street
San Francisco, CA 94107

### NOTE ON FORWARD-LOOKING STATEMENTS

This Current Report on Form 8-K, and the documents to which we refer you herein and in the Definitive Proxy Statement, as well as information included in oral statements or other written statements made or to be made by us or on our behalf contain "forward-looking statements" that do not directly or exclusively relate to historical facts. You can typically identify forward-looking statements by the use of forward-looking words, such as "may," "should," "could," "project," "believe," "anticipate," "expect," "estimate," "continue," "potential," "plan," "forecast" and other words of similar import. Stockholders are cautioned that any forward-looking statements are not guarantees of future performance and may involve significant risks and uncertainties, and that actual results may vary materially from those in the forward-looking statements. These risks and uncertainties include, but are not limited to, the risks detailed in our filings with the SEC, including in our most recent filings on Forms 10-K and 10-Q, factors and matters described or incorporated by reference in this document or our Definitive Proxy Statement, and the following factors:

- the inability to complete the Merger due to the failure to obtain stockholder approval or failure to satisfy the other conditions to the completion of the Merger, including receipt of required regulatory approvals;

RIVERBED TECHNOLOGY,        RR Donnelley ProFile    SWRFBU-MWE-XN    SWRahamr0sl    26-Feb-2015 14:11 EST    882189 TX 6    2*
                                                    11.6.14
FORM 8-K                                          SFR              26-Feb-2015 15:31 EST    MRKD    HMS ESS    0C

- the failure by Newco to obtain the necessary equity and debt financing set forth in the commitments entered into in connection with the Merger, or alternative financing, or the failure of any such financing to be sufficient to complete the Merger and the other transactions contemplated by the Merger Agreement;

- the fact that, although Newco must use reasonable best efforts to obtain the financing contemplated by the debt commitment letter, there is a risk that the debt financing might not be obtained and that, in certain instances, Riverbed's only viable recourse would be the $252 million termination fee payable by Newco;

- the risk that the Merger Agreement may be terminated in circumstances that require us to pay Newco a termination fee of $126 million or reimburse Newco's expenses related to the transactions contemplated by the Merger Agreement up to $4 million;

- the outcome of any legal proceedings that may be instituted against us and others related to the Merger Agreement;

- risks that the proposed Merger disrupts our current operations or affects our ability to retain or recruit key employees;

- the fact that receipt of the all-cash Per Share Merger Consideration would be taxable to stockholders that are treated as U.S. holders for U.S. federal income tax purposes;

- the fact that, if the Merger is completed, stockholders will forgo the opportunity to realize the potential long-term value of the successful execution of Riverbed's current strategy as an independent company;

- the possibility that Newco could, at a later date, engage in unspecified transactions, including restructuring efforts, special dividends or the sale of some or all of Riverbed's assets to one or more as yet unknown purchasers, that could conceivably produce a higher aggregate value than that available to stockholders in the Merger;

- the fact that under the terms of the Merger Agreement, Riverbed is unable to solicit other acquisition proposals during the pendency of the Merger;

- the effect of the announcement or pendency of the Merger on our business relationships, operating results and business generally;

- the amount of the costs, fees, expenses and charges related to the Merger Agreement or the Merger;

- risks related to the Merger diverting management's or employees' attention from ongoing business operations;

- risks that our stock price may decline significantly if the Merger is not completed; and

- risks related to obtaining the requisite consents to the Merger, including the timing and receipt of regulatory approvals from various domestic and foreign governmental entities (including any conditions, limitations or restrictions placed on these approvals) and the risk that one or more governmental entities may deny approval.

Consequently, all of the forward-looking statements that we make in this Current Report on Form 8-K are qualified by the information contained or incorporated by reference herein, including (1) the information contained under this caption; and (2) the information contained under the caption "Risk Factors" and information in our consolidated financial statements and notes thereto included in our most recent filings on Forms 10-K and 10-Q. No assurance can be given that these are all of the factors that could cause actual results to vary materially from the forward-looking statements.

Except as required by applicable law, we undertake no obligation to publicly update forward-looking statements, whether as a result of new information, future events or otherwise. Stockholders are advised to consult any future disclosures that we make on related subjects as may be detailed in our other filings made from time to time with the SEC.

| RIVERBED TECHNOLOGY, | RR Donnelley ProFile | SWRFBU-MWE-XN 11.6.14 | SWRahamr0sl | 26-Feb-2015 14:11 EST | | 882189 TX 7 | 2* |
| FORM 8-K | | ■ | SFR | 26-Feb-2015 15:31 EST | MRKD | HMS ESS | 0C |

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**RIVERBED TECHNOLOGY, INC.**

By:  /s/ Brett Nissenberg
Brett Nissenberg
General Counsel and Senior Vice President

Date: February 26, 2015